**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TRANSUNION INTELLIGENCE LLC, *et al.*, | § |
| | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | §      CIVIL ACTION NO. 2:10-130-TJW |
| | § |
| SEARCH AMERICA, INC., *et al.*, | § |
| | § |
| *Defendants*. | § |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.**  **Introduction**

Before the Court is Defendant Search America, Inc. and Defendant Experian Information Solutions, Inc. (collectively, "Defendants") motion to transfer venue to the District of Minnesota (Dkt. No. 17); Plaintiff TransUnion Intelligence LLC and Plaintiff Trans Union LLC (collectively, "Plaintiffs") motion for leave to file an Amended Complaint (Dkt. No. 34); and Nonparty North Texas Medical Center's motion to quash the deposition of Randy Bacus, CEO of Nonparty North Texas Medical Center (Dkt. No. 48).   The Court, having considered the various motions and the arguments of counsel, DENIES the motion for leave to file an Amended Complaint, GRANTS the motion to quash the deposition of Mr. Bacus and, GRANTS the motion to transfer venue for all defendants to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).   The Court finds that the motion for leave to file an amended complaint is futile given that the Texas Legislature has not waived immunity for the Gainesville Hospital District to be sued.   Because of this, the Court finds that Nonparty North Texas Medical Center has shown good cause to quash Plaintiffs' subpoena.

Finally, the balance of the private and public factors demonstrates that the transferee venue of the District of Minnesota is "clearly more convenient" than the venue chosen by Plaintiffs.   *See In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp*., 551 F.3d 1315 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

## II.    Factual and Procedural Background

Plaintiff TransUnion Intelligence is a limited liability corporation formed under the laws of the State of Nevada, with its principal offices located in Chicago, IL. (Dkt. No. 1, at 1.)   Plaintiff Trans Union LLC is a limited liability corporation formed under the laws of the State of Delaware, with its principal offices located in Chicago, IL. *Id.*   Defendant Search America, Inc. is a Minnesota corporation with its principal place of business in Maple Grove, Minnesota. (Dkt. No. 17-2 at 2.)   Defendant Experian is an Ohio corporation with its principal place of business in Costa Mesa, California. (Dkt. No. 17-10 at 2.)   Nonparty North Texas Medical Center is owned and operated by the Gainesville Hospital District.   Gainesville is located in North Texas, approximately 60 miles north of the Dallas-Fort Worth metroplex, five miles south of the Texas-Oklahoma border, and approximately 220 miles from Marshall, Texas.

On April 13, 2010, Plaintiffs brought this suit for patent infringement against Defendants asserting U.S. Patent No. 7,333,937 (the '937 Patent).   On August 31, 2010, Defendants filed a motion to transfer to the District of Minnesota.   Plaintiffs then filed a motion for leave to amend the Complaint to add North Texas Medical Center as a defendant.   On March 14, 2011, Plaintiffs served Randy Bacus, Chief Executive Officer of North Texas Medical Center, with a subpoena to appear for his deposition and to produce documents.   Responsive documents were due on March

30, 2011, and Mr. Bacus is subpoenaed to appear on April 5, 2011 for his deposition.   On March

25, 2011, North Texas Medical Center filed a motion to quash the deposition of Mr. Bacus.

III.    **Analysis**

    **A.    Plaintiffs' Motion for Leave to File Amended Complaint to add Gainesville Hospital District.**

North Texas Medical Center ("NTMC') is owned and operated by the Gainesville Hospital

District.   Plaintiffs do not dispute that NTMC is a sub-division of the state and is immune from

suit until the Texas Legislature provides a clear indication that it intends to waive immunity.

Plaintiffs contend that the Legislature provided this intent by enacting Tex. Spec. Dist. Code Ann.

§1077.111, which states that "[a]s a governmental entity, the [Gainesville Hospital] district,

through the board, *may sue and be sued* in its own name in any court of this state."   Tex. Spec.

Dist. Code Ann. §1077.111 (emphasis added).   That is, Plaintiffs contend that the Gainesville

Hospital District may be sued through its board, and Plaintiffs have the right to seek an injunction

against the board under the *Ex parte Young* doctrine.

There are two significant problems with Plaintiffs' argument.   First, Plaintiffs incorrectly

assume that the "sue and be sued" language provides an indication of the Legislature's intent to

waive immunity.   *Hall v. Dixon*, 2010 U.S. Dist. LEXIS 105021, at *98 (S.D. Tex. Sept. 30,

2010) ("The Texas Supreme Court has held that the legislature's decision to give the [sic] a

hospital district the authority to sue and be sued does not operate as a general immunity waiver.")

(citing *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 843 (Tex. 2009).   Thus,

Plaintiffs' assumption that they can generally sue the board because of the "sue and be sued"

language is incorrect, and without more, the Gainesville Hospital District and its board are

immune from suit.

Second, although Plaintiffs correctly state that a continuing prospective violations of a federal patent right by state officials may be enjoined by federal courts under the *Ex parte Young* doctrine, Plaintiffs have failed to establish the required nexus between the violation of federal law and the individual accused of violating that law. *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1341 (Fed. Cir. 2006). As stated in *Pennington Seed,* "there must be a connection between the state officer and the enforcement of the act or else the suit will merely make him a representative of the state and therefore improperly make the state a party to the suit." *Id.* at 1342. Plaintiffs purport that they are not suing a "random state official," but instead are suing the board, which is "responsible for the patent infringement being performed by the Gainesville Hospital District." (Dkt. No. 39 at 3.) The Federal Circuit, however, rejected this argument in *Pennington Seed* when it stated that "[a] nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual." *Pennington Seed*, 457 F.3d at 1342-1343 ("The fact that a University Official has a general, state-law obligation to oversee a University's patent policy does not give rise to a violation of federal patent law."). The Court therefore DENIES Plaintiffs' leave to file an amended complaint because the Texas Legislature has not waived immunity for the Gainesville Hospital District to be sued, and Plaintiffs have failed to establish the necessary nexus between a state officer and a violation of a federal patent right. Likewise, the Court also finds that Nonparty North Texas Medical Center has shown good cause to quash Plaintiffs' subpoena of Mr. Bacus.

B.      **Motion to Transfer Venue**

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth and Federal Circuits have enunciated the standard to be used in deciding motions to transfer venue. *See Volkswagen III*, 566 F.3d 1349; *In re Genentech.*, 566 F.3d 1338; *In re TS Tech USA Corp*., 551 F.3d 1315 (applying the Fifth Circuit's en banc *Volkswagen II* decision to rulings on transfer motions out of this Circuit); *Volkswagen II*, 545 F.3d 304. The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 314.

The initial threshold question for the venue transfer analysis is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized [disputes] decided at home; (3) the familiarity of the forum with the law that will govern the case;

5

and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'"   *Id.* (quoting *Volkswagen I*, 371 F.3d at 203).

## C.     Proper Venue

For a motion to transfer venue, the threshold "determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed" in the first place.   *Volkswagon I*, 371 F.3d at 203.   The Court concludes that venue would be proper in the District of Minnesota.   As indicated by the declarations filed by the parties, Search America is subject to personal jurisdiction in the District of Minnesota because its headquarters is in Minnesota. (Dkt. No. 17-2 at 2.)   Experian is subject to personal jurisdiction in the District of Minnesota because it licenses data to customers there. (Dkt. No. 17-10 at 2.) Furthermore, Plaintiffs do not contest that venue would be proper in the District of Minnesota if the lawsuit had originally been filed there.   Therefore, the threshold determination of whether venue would be proper in the transferee venue is met.

## D.     Analysis of Private Interest Factors

### 1.     *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first factor to consider.   "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."   *Volkswagen II*, 545 F.3d at 316.   Search America is the party with the vast majority of relevant records.   Importantly, the accused programs were developed by Search America's Minnesota employees at Search America facilities in Minnesota; and the information regarding the development and administration of the accused programs is located in Minnesota. (Dkt. No. 17-13 at 3; 17-16 at 2.)   It follows that the documents

and electronic information recording the design and development of the accused programs are all in Minnesota.   In addition, all of the financial records regarding the accused programs are also in Minnesota. (Dkt. No. 17-8 at 2.)

Plaintiffs do not contest that none of Search America's product development or software programming of any accused program occurred in Texas. *Id.*   Plaintiffs also do not contest that, like Plaintiffs, none of the defendants maintain any material documents in the Eastern District of Texas.   Instead, Plaintiffs admit that the documents and evidence it intends to use are maintained in Chicago and are in electronic form or will be converted to electronic form for purposes of discovery.   Thus, "most of the documentary evidence can be electronically converted, and therefore, the fact that some relevant documents are stored in Minnesota is not determinative." (Dkt. No. 29 at 14.)   The Court disagrees and finds the substantial sources of proof located in the District of Minnesota weighs in favor of transfer.

## 2. *Availability of Compulsory Process*

The next private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses.   Rule 45(c)(3)(A)(ii) limits the Court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Volkswagen II*, 545 F.3d at 316.   In the present case, Defendants' have identified nine of Search America's key witnesses that reside in Minnesota.   (Dkt. No. 17 at 10.)   All of these witnesses appear to reside over 950 miles from the Marshall, Texas courthouse, and fewer than 20 miles from the District of Minnesota in Minneapolis, Minnesota.   Further Defendant Experian contends that its two party witnesses are based in California, and are relevant only to demonstrate that

Experian has nothing to do with licensing, installing, customizing, operating or providing technical support for the accused programs. (Dkt. No. 17-5 at 3; 17-10 at 2).

In response, Plaintiffs argue that this factor is neutral because even though the parties have not yet identified expert witnesses, it is "likely the two forums would be equally convenient for the expert witnesses."   (Dkt. No. 29 at 9.)   Given that Plaintiffs have not identified a specific expert witness, the Court finds this argument hollow.   Likewise, Plaintiffs only specifically name four fact witnesses and provide the driving differential between Marshall and St. Paul for each of these witnesses.   The Court notes that none of these witnesses reside within the Eastern District of Texas.   Moreover, as Defendants correctly contend, TransUnion's third party witnesses in Florida and New York would have shorter travel time to Minneapolis than to Marshall.   Thus, given that Defendants have actually identified nine witnesses that reside in the District of Minnesota, the Court finds that this factor weighs in favor of transfer.

3.    *Cost of Attendance for Willing Witnesses*

Next, the Court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the District of Minnesota.   The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.   Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205.   The Court must consider the convenience of both the party and non-party witnesses.   *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d. 761, 765-66 (E.D. Tex. 2009).

For the nine witnesses identified by Defendants, the District of Minnesota is indisputably more convenient.   Defendants also argue that Minneapolis would also be clearly more convenient for TransUnion because that are several direct flights each day from Chicago, with a travel time of only 1.5 hours.   Plaintiffs respond that the Minneapolis courthouse is 862 miles from the Marshall courthouse. (Dkt. No. 29 at 9.)   Although interesting, this fact is irrelevant because Plaintiffs have failed to support their bald assertion that there are "numerous potential witnesses for this case in Texas."   (Dkt. No. 29 at 12.)   Thus, the Court finds that for the majority of the witnesses that were actually identified by the parties, the District of Minnesota is more convenient.   The Court therefore finds that this factor weighs in favor of transfer.

4.     *Other Practical Problems*

Practical problems include issues of judicial economy.   *Volkswagen III*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).   Judicial economy weighs against transfer when the Court already has familiarity with the case's factual issues.   *Id.*   This factor is neutral in view of the limited discovery that has taken place to date.

**D.     Analysis of Public Interest Factors**

1.     *Court Congestion*

The Court may consider how quickly a case will come to trial and be resolved.   *In re Genentech*, 566 F.3d at 1347.   This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors."   *Id.*   Given the speculative nature of this factor, the Court finds this factor is neutral.

2.      *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).   Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.   *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Plaintiffs contend that Defendants admit that their accused services are sold here and that Defendants provide the accused services to two customers in this District.   Moreover, Plaintiffs further contend that Defendant Experian maintains significant business connections throughout Texas, including this District.   Defendants respond that the District of Minnesota has a greater interest in resolving this dispute because Search America is based in that district, is active there, and has a significant local presence.   Given the declarations and exhibits submitted by the parties, the Court finds that this factor is neutral because both districts have a local interest.

3.      *Familiarity with the Governing Law*

One of the public interest factors is "the familiarity of the forum with the law that will govern the case."   *Volkswagen I*, 371 F.3d at 203.   Both the District of Minnesota and the Eastern District of Texas are equally capable of applying patent law to infringement claims; therefore, this factor is neutral.   *See In re TS Tech*, 551 F.3d at 1320.

4.      *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

**E.     The Court Grants Defendants' Motion to Transfer**

Considering all of the private and public interest factors, the defendants have met their burden of showing that the District of Minnesota is "clearly more convenient" than the Eastern District of Texas.   *See Volkswagen II*, 545 F.3d at 315.   Three factors weigh in favor of transfer and none weigh against transfer.   Therefore, Defendants' motion to transfer venue is GRANTED.

**IV.   Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Transfer Venue to the District of Minnesota, DENIES the motion for leave to file an Amended Complaint, and GRANTS the motion to quash the deposition of Mr. Bacus.

It is so ORDERED.

SIGNED this  5th  day of April, 2011.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE