UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TRANSUNION INTELLIGENCE LLC and TRANS UNION LLC, | Case No. 11-CV-1075 (PJS/FLN) |
| Plaintiffs, | |
| v. | ORDER |
| SEARCH AMERICA, INC., | |
| Defendant. | |

Michael G. Locklar and Thomas H. Adolph, ADOLPH LOCKLAR; Tim S. Leonard and Glen M. Boudreaux, JACKSON WALKER, LLP; Christopher R. Morris, Lewis A. Remele, Jr., and Susan E. Gustad, BASSFORD REMELE, PA; David L. Newman, ARNSTEIN & LEHR LLP, for plaintiffs.

R. Scott Feldmann and Thomas E. Dietrich, BAKER & HOSTETLER LLP; Mark A. Jacobson and Mark R. Privratsky, LINDQUIST & VENNUM PLLP, for defendant.

Plaintiffs Transunion Intelligence LLC and Trans Union LLC (collectively "Transunion") bring this patent-infringement suit against defendant Search America, Inc. ("Search America"), alleging infringement of U.S. Patent Nos. 7,333,937 and 8,185,408. The two patents are directed to a computer-implemented method and corresponding software used to assess a person's eligibility to receive financial assistance for healthcare services. Transunion alleges that Search America has directly infringed both patents and has induced infringement of the '937 patent.

Search America moves to dismiss Transunion's induced-infringement claim on the ground that Transunion has failed to plausibly plead that Search America had specific intent to infringe the '937 patent.[1] *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,

---

[1]Search America originally moved to dismiss the entire fourth amended complaint; the Court denied Search America's motion without prejudice with the exception of Search America's

681 F.3d 1323, 1339 (Fed. Cir. 2012) (to state a claim for induced infringement, a plaintiff must plead facts plausibly showing that the defendant specifically intended that their customers infringe and knew that the customer's acts constituted infringement); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1318 (Fed. Cir. 2012) (en banc) (per curiam) (a defendant may be liable for induced infringement if it performs some steps of the claimed method and induces others to perform the remaining steps).

As discussed at the hearing on Search America's motion, however, the Court believes that Transunion has pleaded a plausible claim of induced infringement against Search America. In its complaint, Transunion pleads that Search America knew of the '937 patent, and Transunion pleads specific facts in support of that allegation — namely, that Search America studied the '937 patent to distinguish it from Search America's own patent application. Fourth Am. Compl. ¶ 11. Transunion also alleges that Search America performed all but one of the steps of the '937 patent and that either Search America or a customer working with Search America performed the remaining step — namely, the inputting of patient data. Fourth Am. Compl. Ex. B at 2. Transunion further alleges that Search America's customers performed the "inputting" step by populating an on-line form created, controlled, and provided by Search America. *Id.*

In the Court's view, this is sufficient to allege that Search America knowingly induced infringement within the meaning of *Akamai*. These allegations are likewise consistent with *In re Bill of Lading*, in which the Federal Circuit found that intent and knowledge were adequately pleaded despite the failure to plead that the alleged infringer specifically instructed its customers to perform all of the steps of the patented method. *In re Bill of Lading*, 681 F.3d at 1341. In that

---

argument that Transunion has not plausibly pleaded induced infringement. ECF No. 164.

sense, Transunion has pleaded even more than what was pleaded in *In re Bill of Lading*. Whereas the plaintiff in *In re Bill of Lading* relied partly on inferences to allege that the defendants had induced their customers to perform every step of the patented method, Transunion has affirmatively pleaded that Search America performs all but one of the steps and that it induces its customers to perform the final step by creating, controlling, and providing an on-line form for its customers to populate. The inference that Search America intentionally encouraged its customers to populate the form (and thereby intentionally induced infringement under *Akamai*) by creating, controlling, and providing the form to them is not only reasonable; it is almost inescapable. Finally, to the extent that Search America argues that it is implausible to infer intent and knowledge because Search America does not construe the patent as broadly as Transunion does, *In re Bill of Lading* makes clear that this sort of argument is premature at the pleading stage. *Id.* at 1343 n.13.

At the hearing, Search America argued for a much more stringent pleading standard — a standard that (as best as the Court can tell) has never been applied and that (as Search America candidly admitted) would essentially make it impossible to plead an induced-infringement claim at the outset of a case. Search America contended that, before a plaintiff is permitted to plead an induced-infringement claim, the plaintiff should first be required to conduct discovery on its direct-infringement claims (assuming it *has* a direct-infringement claim) and then, in the unlikely event that discovery revealed a "smoking gun" proving intent and knowledge, seek leave to amend the complaint to add an induced-infringement claim. Such a standard is inconsistent with *In re Bill of Lading*, which rejected the notion that a plaintiff is required to plead facts that prove its claims or even that make its claims probable. *Id.* at 1341.

At the hearing on its motion, Search America raised one final argument. It pointed out that, before the Federal Circuit issued its decision in *Akamai*, a defendant in Search America's position who induced another to perform fewer than all of the steps of a method patent could not be held liable for induced infringement. Accordingly, Search America argued, it could not have intended to induce infringement before *Akamai* because it was legally impossible for it to be held liable for inducing a customer to perform only one of the steps of the '937 patent. Furthermore, Search America contended, a defendant cannot be held liable for induced infringement unless the plaintiff can plead and prove that the defendant had the requisite intent and knowledge *before* the plaintiff filed suit. Because this lawsuit was already pending when *Akamai* was decided, Search America asserted, Transunion cannot recover for induced infringement, even for Search America's post-*Akamai* conduct. To support this rather counterintuitive position, Search America pointed to inapposite cases holding that, to state an induced-infringement claim, a plaintiff must plead that the defendant knew of the *patent* before the lawsuit was filed. *See, e.g.*, *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, No. 12-272, 2012 WL 5266049, at \*6 (M.D. Fla. Oct. 24, 2012).

Because Search America had not raised this issue in its briefing, the Court requested supplemental briefing on the question whether, assuming Search America could not be held liable for pre-*Akamai* conduct, it could nevertheless be held liable for post-*Akamai* conduct. In its supplemental brief, however, Search America has abandoned the argument that it is legally impossible for it to be held liable for post-*Akamai* conduct in this lawsuit. Instead, Search America simply contends that Transunion has failed to plead facts to overcome Search America's sincere and reasonable belief that it was not infringing. This is just a reprise of Search America's

original argument that Transunion cannot plausibly plead intent and knowledge because Search America does not construe the patent as broadly as Transunion does. The Court has already rejected this argument and, indeed, when it invited supplemental briefing, the Court specifically instructed Search America *not* to re-brief it — an instruction that Search America simply ignored. At a minimum, therefore, Transunion has stated a claim for post-*Akamai* induced infringement.

In addition, although the Court did not ask for briefing on the issue (and need not definitively resolve it now), the Court notes that Search America's argument that it cannot be held liable for *pre-Akamai* conduct appears to be as dubious as its now-abandoned argument that it cannot be held liable for *post-Akamai* conduct. To begin with, Search America's argument is inconsistent with the actual result in *Akamai* and a later case reversing a judgment on the basis of *Akamai*. *See Travel Sentry, Inc. v. Tropp*, Nos. 2011-1023, 2011-1367, 2012 WL 5382736, at *9 (Fed. Cir. Nov. 5, 2012). If Search America's argument were correct, then presumably *Akamai* and *Travel Sentry* would simply have affirmed the judgments in favor of the alleged infringers. Instead, in both cases the Federal Circuit remanded for a determination of liability under the new principles announced in *Akamai* — liability for conduct that was "pre-*Akamai*." *Akamai*, 692 F.3d at 1318-19; *Travel Sentry*, 2012 WL 5382736, at *9.

Moreover, Search America's argument seems to be at odds with the fundamental thrust of *Akamai*'s analysis. In concluding that a defendant can be held liable for induced infringement even when no one can be held liable for direct infringement, the *Akamai* court distinguished the question of whether a patent has been *infringed* from the question of whether anyone can be held *legally liable* for that infringement:

> Requiring proof that there *has been* direct infringement as a predicate for induced infringement is not the same as requiring proof that a single party would be *liable* as a direct infringer. If a party has knowingly induced others to commit the acts necessary to infringe the plaintiff's patent and those others commit those acts, there is no reason to immunize the inducer from liability for indirect infringement simply because the parties have structured their conduct so that no single defendant has committed all the acts necessary to give rise to liability for direct infringement.

*Akamai*, 692 F.3d at 1308-09. *Akamai* thus appears to use the term "infringement" to mean the acts constituting infringement, not the legal liability for those acts. *See also id.* at 1309 ("'infringement' in this context appears to refer most naturally to the acts necessary to infringe a patent, not to whether those acts are performed by one entity or several").

It appears to the Court, therefore, that the most natural reading of *Akamai* — and the one most consistent with the actual results in *Akamai* and *Travel Sentry* — is that liability for induced infringement requires, not that the defendant knew that its acts would render it legally liable (which would have been impossible pre-*Akamai*), but rather that the defendant knew and intended that (1) each of the steps that make up the method patent would be performed by *someone* (either the defendant itself or someone acting at the behest of the defendant) and that (2) these steps would, if performed by a single entity, constitute direct infringement (which is possible both pre- and post-*Akamai*). Thus, although the Court need not definitively rule on this issue now, the Court finds Search America's argument doubtful and declines to dismiss any part of Transunion's induced-infringement claim based on that argument.

This is the third motion to dismiss that Search America has filed. As described above, this motion relied on dubious arguments, and litigating this motion has been a poor use of the parties' resources and this Court's time. At the hearing on Search America's second motion to

dismiss, the Court asked the parties not to bring any further dispositive motions until they completed discovery and all disputed claim terms had been construed. Search America ignored that instruction, just as it ignored the Court's instruction not to use its supplemental brief to re-brief arguments that the Court had already considered. Because Search America does not appear to believe that it is obliged to follow oral instructions, the Court will formally order the parties not to file any further dispositive motions until all fact and expert discovery has been completed, all non-dispositive motions have been resolved, and all disputed claim terms have been construed following a *Markman* hearing.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 148] is DENIED.

2. The parties are ORDERED not to file any dispositive motions of any kind until all fact and expert discovery has been completed, all non-dispositive motions have been resolved, and all disputed claim terms have been construed following a *Markman* hearing.

Dated: February 22, 2013           s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge