UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TRANSUNION INTELLIGENCE LLC and
TRANS UNION LLC,

Plaintiffs,

v.

SEARCH AMERICA, INC.,

Defendant.

Case No. 11-CV-1075 (PJS/FLN)

ORDER

Michael G. Locklar and Thomas H. Adolph, ADOLPH LOCKLAR; Tim S. Leonard and Glen M. Boudreaux, JACKSON WALKER, LLP; Christopher R. Morris, Lewis A. Remele, Jr., and Susan E. Gustad, BASSFORD REMELE, PA; David L. Newman, ARNSTEIN & LEHR LLP, for plaintiffs.

R. Scott Feldmann and Thomas E. Dietrich, BAKER & HOSTETLER LLP; Mark A. Jacobson and Mark R. Privratsky, LINDQUIST & VENNUM PLLP, for defendant.

Plaintiffs Transunion Intelligence LLC and Trans Union LLC (collectively "Transunion") bring this patent-infringement suit against defendant Search America, Inc. ("Search America"), alleging infringement of U.S. Patent Nos. 7,333,937 and 8,185,408. The two patents are directed to a computer-implemented method used to assess a patient's eligibility to receive financial assistance for healthcare services.

On February 7, 2014, the Patent Trial and Appeal Board ("PTAB") instituted Covered Business Method ("CBM") review of both of Transunion's patents, finding it more likely than not that all of the claims of both patents are invalid. *See* Dietrich Decl., Feb. 12, 2014, Exs. A, B. This matter is before the Court on Search America's motion to stay all proceedings pending the completion of that review. For the reasons stated below, the motion is granted.

The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 — signed into law in September 2011 — created the CBM review procedure under which a party sued for infringing a CBM patent may petition for review of the validity of the patent. *See* AIA § 18(a)(1). A party petitioning for such review may request that the district court stay its proceedings pending completion of the CBM review process. AIA § 18(b). District courts are directed to consider the following factors in determining whether to grant a stay:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). The legislative history of the AIA contains evidence that Congress intended that stays would be granted in almost all cases: "[The AIA] expressly authorizes a stay of litigation in relation to such proceedings and places a very heavy thumb on the scale in favor of a stay being granted. It is congressional intent that a stay should only be denied in extremely rare instances." 157 Cong. Rec. S1363-1364 (daily ed. Mar 8, 2011) (statement of Sen. Schumer). Having considered the § 18(b)(1) factors, the Court finds that a stay is clearly warranted in this case.

### 1. Simplifying the Issues and Streamlining Trial

Since the beginning of this case, the Court has had grave doubts about the validity of Transunion's patents. Patients without the resources to pay for medical treatment often present

themselves at hospitals and other healthcare facilities.  Hospitals and other healthcare facilities often provide treatment to such patients, either because of moral obligation or legal compulsion. *See, e.g.*, Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd.  Many public and private programs assist economically disadvantaged patients in need of medical treatment, and thus healthcare providers commonly interview such patients, obtain economic and other information from them, and then investigate whether any program will pay some or all of their expenses.

Before computers were invented, an employee of a healthcare facility who was investigating whether an impecunious patient was eligible for assistance would do so manually. In other words, the employee would write down the information obtained from the patient and then look at various books or pamphlets to determine if the patient was eligible for assistance. The "business method" that is the subject of the '937 and '408 patents can be summed up as follows:  "Hey, let's use a computer to do this!"  In other words, in an era in which people use computers to compare personal information against eligibility criteria millions of times every day — whether it be a broker investigating whether a home buyer is eligible for a mortgage loan or a guidance counselor investigating whether a high-school student is eligible for a college scholarship — the Patent and Trademark Office ("PTO") somehow determined that the notion of using a computer to investigate whether a patient is eligible for medical assistance was a patentable business method.  The Court is far from an expert on patent law, but the Court cannot help but wonder whether the '937 and '408 patents are invalid for obviousness.

The PTAB's decision to review all of the claims in Transunion's patents strengthens these doubts.  If the PTAB decides that even some of the claims are invalid — as seems likely —

that will significantly narrow not only the scope of trial, but also the scope of the *Markman* hearing and any motions for summary judgment.  And, of course, if the PTAB decides that *all* of the claims are invalid, no trial or other proceedings will be necessary.  Even in the unlikely event that the PTAB does not find that any claim is invalid, the PTAB's decision will nevertheless simplify the issues.  A petitioner in a CBM review is estopped from asserting, in the district court, any invalidity argument that was raised in a CBM review proceeding that resulted in a final written decision.  AIA § 18(a)(1)(D).

Finally, it is worth noting that the Supreme Court has recently granted certiorari in two cases that are relevant to this litigation:  *Limelight Networks Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 895 (2014), and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 734 (2013).  The Court has already had occasion to interpret the Federal Circuit's decision in *Limelight Networks Inc.*, *see* ECF No. 205, and it will be helpful to have the benefit of the Supreme Court's decisions in these cases.

The first § 18(b)(1) factor therefore weighs in favor of granting a stay.

### 2.  Discovery and Trial Date

It is true, as Transunion emphasizes, that discovery is complete in this case.  Indeed, the parties and the Court were just a few days away from a *Markman* hearing when Search America filed its motion for a stay.  From a decisional perspective, however, this case is still in its early stages.  The Court has not yet prepared for a *Markman* hearing, conducted such a hearing, or drafted a *Markman* order; the parties have not yet filed or briefed any summary-judgment motions; the Court has not yet prepared for a summary-judgment hearing, conducted such a

hearing, or drafted an order disposing of the summary-judgment motions; and trial is nowhere near imminent.

Transunion claims that this case will be concluded in six months, citing the trial-ready date of August 28, 2014 that is in the Court's scheduling order.  ECF No. 223.  Transunion mistakes the significance of the trial-ready date, however.  The trial-ready date is simply the date by which a case must be ready for trial.  This District is one of the busiest in the United States — and, given the realities of the Court's crowded docket, the trial-ready date bears almost no relation to the date on which trial will actually commence.  If the Court did not issue a stay, it would not likely issue its *Markman* order until the summer of 2014, both parties would then undoubtedly move for summary judgment, the summary-judgment hearing would likely be scheduled for late 2014, the summary-judgment order would likely be issued in the spring of 2015, and the trial would be scheduled for the summer of 2015.  In other words, it will be well over a year before this case is tried.  The PTAB will likely issue its decision on Search America's petition in early 2015, ECF No. 349, and there is no chance that the Court will try this case before then.

The second § 18(b)(1) factor also weighs in favor of granting a stay.

### 3.  Undue Prejudice and Tactical Advantage

Transunion's main concern seems to be that Search America has, in Transunion's view, gamed the system.  In Transunion's words, Search America "hedged its bets" by proceeding with discovery even after filing its CBM review petition, all the while keeping open the option of seeking a stay.

The Court is unable to discern how this is unfair to Transunion.  Only parties who are being sued for infringement (or who have been charged with infringement) may seek CBM review.  AIA § 18(a)(1)(B).  Therefore it will almost always be true that the party seeking CBM review will be involved in litigation.

Moreover, some courts have granted stays to parties who have merely filed petitions for CBM review.  *See, e.g.*, *Intertainer, Inc. v. Hulu, LLC*, No. 13-5499, 2014 WL 466034 (C.D. Cal. Jan. 24, 2014).  But before the AIA was enacted, this Court was skeptical of motions to stay that were based solely on the fact that the defendant had asked the PTO to reexamine the patent in suit.  *See, e.g.*, *Horton, Inc. v. Kit Masters, Inc.*, Nos. 08-6291, 09-0912, 2009 WL 1606472 (D. Minn. June 5, 2009).  To Search America's credit, it did not seek a stay until the PTAB *granted* review — and, as soon as review was granted, Search America sought a stay, even though it could have waited a few days to see how it fared at the *Markman* hearing.  As far as the Court is concerned, Search America did everything right.

It is true, as Transunion points out, that this case has been pending for a long time, and that Search America bears some share of the responsibility for that fact.  But Transunion is hardly in a position to complain of delay.  From the day that it filed this lawsuit, Transunion has been casting about in search of a viable claim, eventually amending its complaint *five* times in an effort to come up with a plausible theory of infringement.  Just last October, Transunion filed for leave to amend its complaint a *sixth* time, even though the Court had warned Transunion that it would not allow any more amendments.  In short, much of the delay in this case is due to the fact that Transunion sued first and then tried to come up with an infringement claim that might succeed.  Transunion's complaints about delay and prejudice ring hollow.

The third § 18(b)(1) factor also weighs in favor of granting a stay.

### 4.  Burden of Litigation

Finally, the Court finds that granting a stay is likely to substantially reduce the burden of litigation on the parties and the Court.  As noted, the Court has always believed that the patents at issue are probably invalid, and such a finding by the PTAB would obviate the need for the parties to participate in a *Markman* hearing, brief and argue cross-motions for summary judgment, brief and argue numerous motions in limine, prepare for trial, try the case, and then brief and argue post-trial motions.  Moreover, such a finding by the PTAB would obviate the need for the Court to prepare for and conduct a *Markman* hearing, draft a lengthy *Markman* order, prepare for and conduct a hearing on cross-motions for summary judgment, draft a lengthy order on those motions, prepare for and conduct a hearing on numerous motions in limine, draft an order disposing of those motions, prepare for and conduct a trial, prepare for and conduct a hearing on post-trial motions, and draft an order disposing of those motions.  In short, should the PTAB invalidate the patents in suit, the parties will save thousands of hours of attorney time and hundreds of thousands of dollars in fees and expenses, and the Court will save hundreds of hours of scarce judicial time.

The Court also notes that the parties have shown no inclination or ability to narrow or simplify the matters in dispute.  For example, it has always appeared to the Court — and the Court (perhaps mistakenly) understood the parties to agree — that the infringement issues in this case turn on the construction of one or two terms in the patents.  ECF No. 108 at 39-41.  In the parties' joint claim-construction statement, however, they managed to come up with 12 terms that need construing.  ECF No. 210.  This is of a piece with the parties' litigation tactics, which

have resulted in nearly 350 docket entries despite the fact that the merits of the claims and defenses have yet to be addressed in a substantial way.  As already explained, even if the PTAB's decision does not result in the dismissal of this case, its decision will necessarily streamline and simplify the case, and that will significantly reduce the burden of litigation on the parties and the Court.  The fourth § 18(b)(1) factor also weighs in favor of granting a stay.

In sum, all four of the § 18(b)(1) factors strongly support a stay.  The Court therefore grants Search America's motion and stays all further proceedings in this case until the PTAB issues its decision.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendant's motion to stay [ECF No. 337] is GRANTED.

2.    This case is STAYED until further order of the Court.

3.    Upon completion of the CBM review process, the parties are directed to inform the Court of the result.

Dated: February 26 , 2014                        s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge